## Case No. 14,405.

UNITED NICKEL CO. et al. v. AMERICAN NICKEL–PLATING WORKS et al.

[4 Ban. & A. 74.] [1]

Circuit Court, D. Massachusetts.   Dec., 1878.

PATENTS—ASSIGNMENT—"INVENTION"—IMPROVEMENTS.

1. The word "invention" used in a contract for the assignment of a patent therein recited. and to which it refers, includes only the invention described in the patent to be assigned, and reissues and extensions thereof;  it cannot be held to cover other improvements in the same art. although the patent to be assigned would be worthless without them.

2. The question of license under particular circumstances. considered.

In equity.

T. W. Clarke, for complainants.
Benjamin F. Butler and D. H. Rice, for defendants.

LOWELL, Circuit Judge.   This bill is brought under two patents taken out by Isaac Adams, Jr., and assigned to the plaintiffs;  one is dated August 3d, 1869, No. 93,-157, and the other May 10th, 1870, No. 102,-748.   These patents are for a process, and an anode to improve the art of electroplating with nickel, and have been adjudged valid in two suits brought in this court by this plaintiff corporation. reported United Nickel Co. v. Anthens [Case No. 14,406];  United Nickel Co. v. Keith [Id. 14,408].   The validity and title are admitted, but the defendants maintain that, in equity, they are licensed or authorized to use the invention.   A great body of evidence appears in the record, too much of which is hearsay, and otherwise inadmissible.   I have, however, carefully read the whole of it.

Isaac Adams, Jr., the plaintiffs' assignor, has taken out several patents connected with the art of plating with nickel.   The first was No. 57,271, dated August 21st. 1866. which is said to be the earliest patent on this subject. In the specification, Adams declares that he has invented an improvement in coating metals with [nickel]. and that his principal object is to protect gas-tips or burners from oxidation.   It is well known, he says, that the action of flame upon common gas burners soon impairs their orifices by oxidation. and that he has discovered that by coating their surfaces with a thin deposit of nickel, the heat and flame will have no detrimental effect upon the tips.   "From the cheapness and ease of the application of nickel," he adds, "by electroplating or otherwise, and the protection which the coating imparts, it will be obvious that this invention is of great practical utility."   He claims "rendering gas-tips and other similar articles anti-corrosive to heat or moisture, by surfacing them with nickel, substantially as set forth."

---

[1] [Reported by Hubert A. Banning. Esq., and Henry Arden, Esq., and here reprinted by permission.]

No process of plating is described or set forth in this patent, and it appears that plating with nickel, though it could be accomplished, was by no means the easy thing which the patentee assumed it to be, and that he himself, in the inventions for which he obtained the later patents now sued on, produced a process much more satisfactory than any which had preceded it, and indeed rendered the art commercially valuable for the first time.

Before these patents were applied for, one Cook, in making inquiries upon the subject. discovered that the Adams patent of 1866 was the earliest upon the subject, and he appears to have thought, and to have been advised, that, if he could obtain the title to this patent, he could control and subordinate all future improvements or patents for plating with nickel. Cook, who was a ship master, intended at first to apply the invention only to ships, and Adams gave him a license or assignment, for that purpose, without charge. He afterwards thought to acquire the whole patent, and, with this object in view, he obtained from Adams a contract under seal. dated December 5th, 1868, reciting the patent of 1866, and the assignment for use on ships, in which Adams agreed to convey to Cook all his remaining right, title and interest in said invention at any time on or before March 1st, 1869. upon payment of $5,000.

Cook proceeded to procure the money in order to complete the purchase of this patent, and to put it into the hands of a company at a valuation of half a million dollars. In the course of the inquiries and investigations of Cook and his friends, Adams appears to have discovered what their hopes were, and when the time came for conveying the patent, his counsel, on his behalf. informed them publicly and emphatically that Adams did not consider the patent to be of much value or to be a controlling patent, and that it did not carry with it, and that Adams did not intend to convey to Cook and his assigns, the process or processes which he had, in his own mind, wholly or partly worked out; but, on the contrary, that he had agreed to sell them to other persons. Cook and his friends insisted on taking the conveyance, and, after they had taken it in the simple form of an assignment of the patent, they notify Adams that, in their opinion he had not fully complied with his contract, and that they should try to obtain what they thought themselves entitled to, namely, some invention not included in the patent of 1866. but included in the contract, as they maintained. They have brought no action for damages, nor any suit for specific performance for the insufficient fulfillment of the contract. They organized the American Nickel-Plating Company with the intended capital. and that company took from Cook an assignment of the patent of 1866. The United Nickel Company, which is the principal plaintiff here, was organized to take, use and sell the processes and patents to be issued afterwards. In June, 1869, immediately after the latter company was organized, the two companies arranged their disputes, and the American Company assigned the patent of 1866 to the plaintiff company, receiving in return a large number of its shares; so that the plaintiff company appears to own all three of Adams' patents. But the defendants allege that the compromise, above mentioned, and the assignment to the plaintiff company of the patent of 1866, were not duly voted and passed in accordance with the laws of New York concerning corporations. In 1875, acting on this assumption. the American Company granted a license under that patent, which license the defendants hold, and in 1876 they procured a conveyance from Cook of the "invention" which they assumed him to hold or to have the right to acquire as the residue of the contract with Adams, of December, 1868, and at once granted to the defendants a license to use this "invention."

The defendants, therefore, contend that Cook equitably owns some invention besides the patent of 1866, because his contract contains the word "invention," and the patent really contains, as they say, no invention at all, or none of any value, and certainly none worth $5,000; and since Adams has made inventions which would render that patent valuable if united with it, he is equitably bound to convey them to Cook and his assigns; that they are his assigns; and that equity will hold that to be done which ought to be done, and, therefore, they may successfully defend this suit as the equitable owners of these inventions.

This somewhat artificial structure wants a foundation. The contract of Adams with Cook, made in December, 1868, is in a usual form. promising to convey to him the patent of 1866 and the invention therein patented. and nothing more. If there was no invention described in that patent. none was to be conveyed. The word "invention" was made use of in order to include reissues and extensions. in accordance with a practice which has grown out of certain familiar decisions of the courts. There was no fraud perpetrated on Cook or his assigns, because this, which is the true construction of the contract, was pointed out and insisted on by Adams before the deed was delivered. There is no ground whatever, of law or fact, for holding that Cook was ever entitled in law or equity, by estoppel or otherwise, to the inventions for which the patents in suit were taken out by Adams in 1869 and 1870. This fundamental defect renders the other links of the chain of defence useless, and their validity will not be considered. Decree for the complainants for an injunction and an account.

[For other cases involving these patents, see note to Case No. 14,406.]